UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THOMAS DEMARTINO and FRANK
DEMARTINO,

                  Plaintiffs,

        - against-

STATE OF NEW YORK, TOWN OF
HUNTINGTON, INTERNAL REVENUE
SERVICE, STATE OF NEW YORK
COMMISSIONER OF TAXATION AND
FINANCE, and JOHN DOES # 1-5,

                  Defendants.
------------------------------------------------------------X

FEUERSTEIN, J.

**OPINION AND ORDER**
**12-CV-3319 (SJF)(AKT)**

F I L E D
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★     JUN 2 4 2013     ★

LONG ISLAND OFFICE

On July 3, 2012, *pro se* plaintiffs Thomas DeMartino ("Thomas") and Frank DeMartino

("Frank") (collectively, "plaintiffs") commenced this civil rights action pursuant to 42 U.S.C. §

1983 ("Section 1983") against defendants State of New York ("the State"), State of New York

Commissioner of Taxation and Finance and "John Does #1-5" ("the Doe defendants"), identified

only as employees of the State,[1] (Compl., ¶ 13), (collectively, "the State defendants"); the Town

---

[1] Although plaintiffs identify the Doe defendants as "natural persons who at all times
relevant herein were each an employee, agent, representative and/or servant of the State of New
York and/or the Town of Huntington, (Compl., ¶ 13), plaintiffs assert both the first and fifth
causes of action against only the State and all of the Doe defendants, and not the Town. In both
the first and fifth causes of action, plaintiffs allege that "[t]he actions of the State of New York
and its employees, agents, representatives and/or servants deprived Thomas DeMartino of his
liberty and property interests without due process of law * * *," (Compl., ¶¶ 42, 71). In addition,
in the second and third causes of action, plaintiffs allege that "[i]n 2004, the State of New York
and its employees, agents, representatives and/or servants acting under color of state law
commenced a baseless criminal proceeding against Thomas * * *," (Compl., ¶¶ 45, 52), and in
the sixth cause of action, plaintiffs allege that "[t]he actions of the State of New York and its
employees, agents, representatives and/or servants deprived Thomas DeMartino and Frank
DeMartino of his [sic] liberty and property interests without due process of law * * *." (Compl.,

of Huntington ("the Town"); and the Internal Revenue Service ("IRS"), alleging violations of their constitutional rights. Pending before the Court are: (1) a motion by the IRS to dismiss the complaint as against it pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction; and (2) a motion by the State defendants to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim for relief, respectively. For the reasons set forth below, the motions are granted.

I.    Background[2]

    A.    Factual Background

In 2001, D&D Mason Contractors, Inc. (D&D), of which Thomas was the sole principal, commenced a lawsuit in the Supreme Court of the State of New York, County of Suffolk against the Town alleging breach of contract regarding a project known as "Sidewalk Improvements and Requirements Contract, Main Street, Huntington-Phase I" ("the breach of contract action"). (Compl., ¶ 14). Plaintiffs allege that in response to the breach of contract action, Richard Dickstein ("Dickstein"), the Town's project manager, indicated that the Town "would use their political connections to 'destroy' D&D * * * Thomas * * * and anybody else that was involved with litigation against the Town * * *." (Compl., ¶ 15).

On or about May 28, 2004, a desk appearance ticket was issued charging Thomas with

¶ 76). There is no similar reference to any employees, agents, representatives and/or servants of the Town in any of the causes of action. Thus, it is clear that the Doe defendants are comprised only of State employees, agents, representatives and/or servants.

    [2] The following facts are taken from the pleadings and do not constitute findings of fact by the Court.

one (1) count of offering a false instrument for filing in the first degree in violation of Section 175.35 of the New York State Penal Law in relation to his filing of written complaints with the New York State Department of Environmental Conservation ("DEC") alleging that the Town knowingly buried fuel tanks in the sidewalks on Main Street without undertaking the appropriate remedial measures provided by the law. (Compl., ¶ 16). Specifically, Thomas was charged with filing a "Supporting Deposition" purportedly executed by Ivano Valenti ("Valenti") on or about August 23, 2001, with the knowledge that the instrument was false and that it would be filed, and become a record of a public office, and with the intent that it would defraud the DEC. (Compl., ¶ 17). The criminal charge was dismissed against DeMartino pursuant to Section 30.30(1)(a) of the New York Criminal Procedure Law due to a speedy trial violation. (Compl., ¶ 20). Plaintiffs allege that the criminal prosecution "was in bad faith and part of a campaign and pattern of harassment against D&D * * * Thomas * * *, and others associated with D&D * * *." (Compl., ¶ 21).

In 2003 or 2004, the New York State Department of Labor ("DOL") initiated administrative proceedings against D&D, Thomas "and others for alleged violations of the prevailing wage laws." (Compl., ¶ 22). Plaintiffs allege that "[t]he baseless administrative proceedings resulted in an order and determination, dated April 7th, 2005, and filed April 8th, 2005, that was obtained by way of default, i.e., respondents were not present at the hearing to defend the allegations." (Compl., ¶ 23). D&D and Thomas subsequently filed an Article 78 petition in the Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("the Appellate Division"), seeking to annul, vacate and set aside the April 2005 order. (Compl., ¶ 24). Valenti and another witness, DiBenedetto, both of whom had participated in the default hearing, submitted sworn affidavits as part of the Article 78 petition which

3

contradicted their testimony at the hearing. (Compl., ¶ 25). Pursuant to a stipulation of settlement, the April 2005 order against D&D, Thomas and others was annulled, vacated and set aside. (Compl., ¶ 24). Plaintiffs contend that the DOL administrative proceedings "were asserted in bad faith and part of campaign and pattern of harassment against D&D * * *, Thomas * * *, and others." (Compl., ¶ 26).

On or about January 3, 2007, D&D obtained a judgment against the Town in the breach of contract action. (Compl., ¶ 27). D&D subsequently sold the judgment to DeMartino Property Management, Inc., which is owned and controlled by Frank. (Compl., ¶ 34). Thereafter, the judgment was assigned to Frank personally and he sold a fifty percent (50%) share in the judgment to Thomas personally. (Compl., ¶ 35).

"[I]n the latter portion of 2007 and continu[ing] to 2008," the State commenced additional administrative proceedings against Thomas alleging prevailing wage violations ("the 2007-2008 administrative proceedings"). (Compl., ¶ 29). According to plaintiffs, the State "moved forwarded [sic] with these administrative proceedings because they knew that they can succeed in sustaining the administrative charges in a forum they controlled, i.e., a kangaroo court, at the same time aiding the Town * * *, in intimidating, exacting revenge, gaining an advantage in the litigation between D&D and the Town * * * whereby the Town * * * would and could evade its legal obligations and avoid paying the money judgment obtained against it with all of the accrued interest." (Compl., ¶ 30). The State "succeeded in nearly all of the administrative charges asserted against * * * D&D * * * and Thomas * * * [and] received a significant money award accruing at a high interest rate, a civil penalty, and findings that D&D * * * and Thomas * * * knowingly and willingly committed prevailing wage violations * * * [which] caused [D&D and Thomas] to be debarred from public works contracts for a period of at

4

least five years." (Compl., ¶ 31). According to plaintiffs, "[t]he administrative proceedings were a complete mockery of the judicial process and the United States Constitution," (Compl., ¶ 32), and the State "obtained relief in the administrative proceedings by violating the constitutional [sic] protected rights of the parties." (Compl., ¶ 33). D&D's and Thomas's subsequent Article 78 petition relating to the 2007-2008 administrative proceedings was denied by the Appellate Division and the New York State Court of Appeals denied their application for leave to appeal to that Court. (Id.) According to plaintiffs, their collection of the judgment against the Town "has been frustrated by the [State's] bad faith administrative attack on [D&D and Thomas]" and the Town "has illegally withheld and avoided paying the judgment against it plus all of the accrued interest with the help of the State * * *." (Compl., ¶ 36).

Plaintiffs further allege that they are both indebted to the IRS and the New York State Department of Taxation and Finance ("DTF"). (Compl., ¶ 37). According to plaintiffs, "[w]hile the State * * * on one hand has frustrated [their] ability to collect money judgments due and owing, on the other hand the [DTF] has taken measures to enforce and collect taxes due and owing to the State. Nevertheless, the federal and state tax agencies have selectively elected not to pursue the money judgment, with all of the accrued interest, owed by the Town * * *. This double standard is clearly unconstitutional." (Compl., ¶ 37).


B.     Procedural Background

On July 3, 2012, plaintiffs commenced this civil rights action pursuant to Section 1983 against the State defendants, the Town and the IRS alleging: (1) violations of their due process rights under the Fifth and Fourteenth Amendments to the United States Constitution (first and fifth causes of action against the State and Doe defendants and sixth cause of action against all

5

defendants); (2) malicious prosecution (second cause of action against the State, Town and Doe defendants); (3) abuse of criminal process (third cause of action against the State, Town and Doe defendants); and (4) false arrest (fourth cause of action against the State, Town and Doe defendants). With respect to their first cause of action, plaintiffs allege that the State defendants "made derogatory findings against Thomas * * * regarding falsification of payroll records charge [sic] without providing him written notice of these charges in advance of the hearing in violation of his constitutionally protected rights" and that "[a]s a direct result [of] these findings without due process of law, Thomas * * * suffered debarment from public works contracts for at least five years and a tangible burden on its [sic] future employment prospects." (Compl., ¶¶ 40-41). With respect to both their second and third causes of action, plaintiffs allege that the State defendants "vindictively and maliciously commenced the [2004 criminal] proceeding to retaliate against Thomas * * * for his breach of contract litigation with the Town * * *" in violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. (Compl., ¶¶ 47, 49, 54, 56). With respect to their fourth cause of action, plaintiffs allege that the Town and State defendants "conspired, instigated and played an active role in procuring [Thomas's] desk appearance [ticket] in 2004 as part of the campaign to harass him for his breach of contract litigation against the Town * * *" in violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. (Compl., ¶¶ 59, 64). With respect to their fifth cause of action, plaintiffs allege that the State defendants "made derogatory findings against Thomas * * * regarding prevailing wage violations without providing him the right to confront witnesses" when it failed to call Valenti and DiBenedetto as witnesses at the hearing in the 2007-2008 administrative proceedings. (Compl., ¶¶ 68-69). With respect to their sixth cause of action, plaintiffs allege that the State defendants and Town "have illegally frustrated their

6

ability to collect their judgment and meet their tax obligations" and that "[t]he State and Federal tax authorities are selectively attempting to collect taxes from the parties while not pursuing all available assets due and owing from the Town * * *." (Compl., ¶ 75). Plaintiffs seek: (1) a "[d]eclaratory judgment vacating the administrative judgment" against them; (2) "[i]njunctive relief enjoining the State * * * from enforcing the administrative judgment" against them; (3) damages; and (4) costs and attorney's fees.

The State defendants and IRS now move to dismiss the complaint against them pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, and the State defendants also move to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. Although plaintiffs did not timely serve opposition to the motions, the Court has considered the arguments raised by Frank, who only has standing to assert the sixth cause of action, in his letters to the Court dated January 7 and February 7, 2013 since he is proceeding *pro se*. Thomas has not opposed the motions.

II.    Discussion

    A.    Rule 12(b)(1)

        1.    Standard of Review

Federal courts are courts of limited jurisdiction, see Gunn v. Minton, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013); Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012), and may not preside over cases absent subject matter jurisdiction. See Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L. Ed. 2d 502 (2005) (holding that federal courts may not exercise jurisdiction absent a statutory basis);

Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (holding that federal courts "possess only that power authorized by Constitution and statute * * *.")  Lack of subject matter jurisdiction cannot be waived or forfeited and may be raised at any time by a party or by the court *sua sponte*.  See Gonzalez v. Thaler, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012); see also Sebelius v. Auburn Regional Medical Center, 133 S. Ct. 817, 824, 184 L. Ed. 2d 627 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."); Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202, 179 L.Ed.2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. * * * Objections to subject matter jurisdiction * * * may be raised at any time.")  If a court lacks subject matter jurisdiction, it must dismiss the action.  See Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009).


      2.     The IRS's Motion

Plaintiffs assert only one (1) claim against the IRS, i.e., their sixth cause of action seeking damages under Section 1983 for a violation of their due process rights.

Since "a prerequisite for relief under Section 1983 * * * is that the defendant acted under color of state law * * * [a]n action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers." Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n. 4 (2d Cir. 1991); see also Dotson v. Griesa, 398 F.3d 156, 162 (2d Cir. 2005) ("[The Second Circuit] has long construed

the phrase 'under color of state law' as used in * * * 42 U.S.C. § 1983, to apply only to state

actors, not federal officials."); Yalkut v. Gemignani, 873 F.2d 31, 35 (2d Cir. 1989) (holding that

since Section 1983 "applies only to actions taken under the color of state law," the plaintiff could

not maintain a Section 1983 claim against the defendant-IRS agents because the defendants'

actions "were purely federal in nature").

Although Section 1983 claims asserted against federal officials in their individual

capacity are routinely construed by courts to be claims pursuant to Bivens v. Six Unknown

Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619

(1971), plaintiffs do not assert a claim against any federal official in his or her individual

capacity. Rather, plaintiffs' claim is against the IRS, a federal agency. "[A] Bivens action is

brought against individual federal agents rather than against the federal agency." Polanco v. U.S.

Drug Enforcement Administration, 158 F.3d 647, 650 (2d Cir. 1998); see also F.D.I.C. v. Meyer,

510 U.S. 471, 484-85, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) (declining to expand Bivens to

actions against a federal agency); Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) ("A

Bivens action is a judicially-created remedy designed to provide individuals with a cause of

action against federal officials who have violated their constitutional rights. * * * The only

remedy available in a Bivens action is an award for monetary damages from defendants in their

individual capacities."); Platsky v. C.I.A., 953 F.2d 26, 28 (2d Cir. 1991) ("[I]n Bivens actions

jurisdictional limitations permit a plaintiff to sue only the federal government officials

responsible for violating the plaintiff's constitutional rights; a plaintiff cannot sue the agency for

which the officials work.")

Absent a waiver, sovereign immunity, under which "the United States, as sovereign, is

immune from suit, save as it consents to be sued," Hercules Inc. v. U.S., 516 U.S. 417, 422, 116

S. Ct. 981, 134 L.Ed.2d 47 (1996) (internal quotations and citations omitted), bars any <u>Bivens</u> claim against the United States, a federal agency or a federal official acting in his official capacity. <u>See</u> <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 510 (2d Cir. 1994); <u>see also</u> <u>Zynger v. Department of Homeland Security</u>, 615 F. Supp. 2d 50, 56 (E.D.N.Y. 2009), <u>aff'd</u>, 370 Fed. Appx. 253 (2d Cir. Mar. 25, 2010) (dismissing <u>Bivens</u> claims against a federal agency upon finding no waiver of sovereign immunity); <u>Sutera v. Transportation Security Administration</u>, 708 F. Supp. 2d 304, 312 (E.D.N.Y. 2010) ("Unlike federal officers, federal agencies may not be subjected to <u>Bivens</u> actions, since those bodies retain their sovereign immunity.") Accordingly, plaintiffs' Section 1983 claim against the IRS cannot be considered to be a <u>Bivens</u> claim against the IRS. Therefore, the IRS's motion to dismiss is granted and the complaint is dismissed in its entirety without prejudice as against the IRS for lack of subject matter jurisdiction.

### 3.     The State Defendants' Motion

The Eleventh Amendment to the United States Constitution bars suits seeking retroactive relief, including monetary damages, in a federal court by private parties against a state or one of its agencies, absent consent to suit or an express statutory waiver of immunity. <u>See</u> <u>Virginia Office for Protection and Advocacy v. Stewart</u>, 131 S. Ct. 1632, 1638, 179 L. Ed. 2d 675 (2011); <u>Edelman v. Jordan</u>, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); <u>Ex parte Young</u>, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908). In addition, the Eleventh Amendment bars claims for retroactive relief against state officials when "the state is the real, substantial party in interest." <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting <u>Ford Motor Co. v. Department of Treasury</u>, 323 U.S. 459, 464, 65

S.Ct. 347, 350, 89 L.Ed.2d 389 (1945), overruled on other grounds by Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)); see also Huang v. Johnson, 251 F.3d 65, 69-70 (2d Cir. 2001). "Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'" Pennhurst State, 465 U.S. at 101, 104 S. Ct. 900 (quoting State of Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963)).

Since the State has not consented to be sued for damages in federal court under Section 1983, and there is no express statutory waiver of sovereign immunity, plaintiffs' Section 1983 claims for damages against the State defendants, with the exception of the Doe defendants in their individual capacity, are barred by the Eleventh Amendment. See, e.g. Quern v. Jordon, 440 U.S. 332, 338-39, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (holding that Section 1983 did not abrogate the States' Eleventh Amendment immunity); Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (holding that a Section 1983 claim against a State agency was barred by the Eleventh Amendment).

Moreover, with the exception of state law claims seeking damages against state officials in their individual capacity, see Bad Frog Brewery, Inc. v. New York State Liquor Authority, 134 F.3d 87, 102 (2d Cir. 1998); Brown v. New York State Department of Correctional Services, 583 F. Supp. 2d 404, 414 (W.D.N.Y. 2008), the Eleventh Amendment also bars suits in federal courts seeking relief, whether prospective or retroactive, against the State, a state agency and state officials for their alleged violation of state law. See Pennhurst State, 465 U.S. 89, 106, 104 S.Ct. 900; see also Concourse Rehabilitation and Nursing Center, Inc. v. DeBuono, 179 F.3d 38, 44 (2d Cir. 1999) (holding that the Eleventh Amendment bars federal courts from considering purely state law claims). Since plaintiffs do not allege that the State defendants acted *ultra vires*, i.e.

without the authority of law, see <u>Florida Department of State v. Treasure Salvors, Inc.</u>, 458 U.S. 670, 696-697, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) (plurality opinion), any state law claims they assert against the State defendants, with the exception of any claim seeking damages against the Doe defendants in their individual capacity, are also barred by the Eleventh Amendment. Accordingly, the branch of the State defendants' motion seeking dismissal of plaintiffs' Section 1983 claims and any state law claims against them pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is granted to the extent that plaintiffs' Section 1983 claims seeking damages against the State defendants, with the exception of the Doe defendants in their individual capacity, and any state law claims against the State defendants, with the exception of any state law claim seeking damages against the Doe defendants in their individual capacity, are dismissed without prejudice for lack of subject matter jurisdiction.

    B.    Rule 12(b)(6)

        1.    Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See In re Terrorist Attacks on September 11, 2011, 714 F.3d 118, 122 (2d Cir. 2013); Rothstein v. UBS AG, 708 F.3d 82, 90 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950; see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (quotations and citations omitted)). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); see also Matson v. Board of Education of City School District of New York, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotations and citation omitted)).

The Court must limit itself to the facts alleged in the complaint, which are accepted as

13

true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). Accordingly, the exhibits submitted by the State defendants with their motion to dismiss have not been considered by the Court.

## 2. Due Process Claims

### a. Stigma-Plus Claim (First Cause of Action)

#### i. Deprivation of a Protected Interest

Although "[g]enerally, defamation is an issue of state, not of federal constitutional, law, * * * an action can be grounded in 42 U.S.C. § 1983 when th[e] plaintiff can demonstrate 'a stigmatizing statement plus a deprivation of a tangible interest'" by a government official. Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010) (quoting Algarin v. Town of Wallkill, 421 F.3d 137, 138 (2d Cir. 2005)); see also Paul v. Davis, 424 U.S. 693, 711-12, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976) (holding that "the interest in reputation [alone] * * * is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law" and that it is the alteration of a right or status previously recognized by state law and accompanying a harm to reputation that "invoke[s] the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment."); Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004) ("A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or

14

property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under Section 1983. Instead, when dealing with loss of reputation alone, a state law defamation action for damages is the appropriate means of vindicating that loss.") A stigma-plus claim "involves an injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process." Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006) (quotations and citation omitted). "To establish a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Vega, 596 F.3d at 81 (quotations and citation omitted); see also Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005) (holding that a stigma-plus claim "requires a plaintiff to allege (1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement." (alterations, quotations and citation omitted)). "This state-imposed alteration of status or burden must be in addition to the stigmatizing statement." Vega, 596 F.3d at 81 (quotations and citation omitted). "[I]n ascertaining whether a complaint alleges the deprivation of a stigma-plus liberty interest, [the court] need only determine that both 'stigma' and 'plus' are claimed to be sufficiently proximate." Velez, 401 F.3d at 89.

Although plaintiffs have alleged damage to Thomas's reputation and the deprivation of a tangible interest, i.e., Thomas's debarment from public works contracts for a period of at least five (5) years, they have not alleged the "threshold requirement" of a stigma-plus claim, i.e., "the existence of a reputation-tarnishing statement that is *false*." Vega, 596 F.3d at 82 (emphasis in

original). Specifically, plaintiffs do not allege that the conduct underlying the administrative proceedings against D&D and Thomas, i.e., that Thomas knowingly and willingly committed prevailing wage violations, did not occur. Since plaintiffs do not allege falsity, Thomas is not entitled to relief on his stigma-plus due process claim. See, e.g. Codd v. Velger, 429 U.S. 624, 627, 97 S. Ct. 882, 51 L. Ed. 2d 92 (1977) (holding that the absence of any allegation that the challenged statement was substantially false was "fatal to respondent's claim under the Due Process Clause that he should have been given a hearing."); Vega, 596 F.3d at 82; John Gil Construction, Inc. v. Riverso, 99 F. Supp. 2d 345, 352 (S.D.N.Y. 2000), aff'd, 7 Fed. Appx. 134 (2d Cir. Apr. 12, 2001) (dismissing the plaintiff's liberty-interest due process claim because there was no allegation that the stigmatizing statement was comprised of any false information).

### ii. Process Due

In any event, plaintiffs cannot establish that the State defendants deprived them of a protected interest without due process. "Because stigma plus is a species within the phylum of procedural due process claims, * * * in order to bring a successful stigma-plus claim, the plaintiff * * * must demonstrate that [his] liberty was deprived without due process of law." Segal, 459 F.3d at 213; see also Ahlers v. Rabinowitz, 684 F.3d 53, 62 (2d Cir. 2012), cert. denied, 133 S. Ct. 466, 184 L. Ed. 2d 261 (2012) ("In alleging a violation of his procedural due process rights, a plaintiff must plead facts sufficient to give rise to a claim that he was deprived of his property without constitutionally adequate pre- or post-deprivation process." (quotations and citation omitted)). "[T]he availability of adequate process defeats a stigma-plus claim." Segal, 459 F.3d at 213.

Since the final determination in the administrative proceedings was part of an established

state procedure, the inquiry is: what process was due Thomas. See, e.g. Rivera-Powell v. New York City Board of Elections, 470 F.3d 458, 466 (2d Cir. 2006). In determining what process was due, the Court must balance the following three (3) factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Rivera-Powell, 470 F.3d at 466 (quoting Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)); see also Ahlers, 684 F.3d at 62. Although plaintiffs claim that Thomas did not have written notice of the charge that he falsified payroll records in advance of the hearing in the 2007-2008 administrative proceedings[3], (Compl., ¶ 40), they do not allege that Thomas did not have an opportunity to be heard in the 2007-2008 administrative proceedings. (See Compl., ¶¶ 29-33). Moreover, after the final determination in the administrative proceedings, Thomas had the opportunity to obtain judicial review of the determination in an Article 78 proceeding and, in fact, availed himself of both that process, as well as the process of seeking leave to appeal the dismissal of his Article 78 petition. (See Compl., ¶ 33). The combination of the hearing in the 2007-2008 administrative proceedings, as well as the state law procedures for obtaining judicial review of the final determination in the administrative proceedings, satisfies due process. See, e.g. Rivera-Powell, 470 F.3d at 466-67 (finding that the

---

[3] Although Section 701.4(a) of the Compilation of Codes, Rules and Regulations of the State of New York provides that the notice of hearing commencing adjudicatory proceedings shall include, *inter alia*, a statement of the charges with which the respondent is charged, it further provides that "nothing shall preclude the consideration at the hearing of relevant issues not raised in the notice, in a manner consistent with Respondent's right to respond to such issues[.]" 12 N.Y.C.R.R. § 701.4(a)(4).

combination of a pre-deprivation hearing at which the plaintiff's objection was considered, and the opportunity to obtain full judicial review of the administrative determination by way of a special proceeding under New York Election Law section 16-102, satisfied due process).

### iii. Quasi-Judicial Immunity

Moreover, the only "stigma" plaintiffs allege are the "derogatory findings against Thomas * * * regarding falsification of payroll records" made by the hearing officer, and adopted by the Commissioner of Labor, in the administrative proceedings. (Compl., ¶ 40). "It is * * * well-established that officials acting in a judicial capacity are entitled to absolute immunity against Section 1983 actions, and this immunity acts as a complete shield to claims for money damages." Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999); see also Young v. Selsky, 41 F.3d 47, 51 (2d Cir. 1994) ("[A]bsolute immunity has been extended to individuals performing duties closely associated with the judicial process." (quotations and citation omitted)). "[I]t is the nature of the function performed, not the identity of the actor who performed it, that informs [the court's] immunity analysis." Walczyk v. Rio, 496 F.3d 139, 164 (2d Cir. 2007) (alterations, quotations and citation omitted); see also King v. Simpson, 189 F.3d 284, 287-88 (2d Cir. 1999) ("In determining whether an official is entitled to absolute immunity, [courts] must take a functional approach and look to the particular acts or responsibilities that the official performed."); Young, 41 F.3d at 51 ("Whether non-judicial officers merit quasi-judicial absolute immunity depends upon the functional comparability of their judgments to those of the judge." (quotations and citation omitted)). Courts must "examine the nature of the actions that the [official] performed before deciding what immunity, if any, attaches to the actions." King, 189 F.3d at 288. "The court must conduct some factual inquiry to determine if the duties of the defendants were judicial

18

or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity." Id. (alterations, quotations and citation omitted). "The functional comparability analysis is made by considering the following six factors, among others, characteristic of the judicial process:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of the error on appeal."

Young, 41 F.3d at 51 (quoting Cleavinger v. Saxner, 474 U.S. 193, 202, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985)); see also DiBlasio v. Novello, 344 F.3d 292, 298 (accord). "[O]nce a court determines that an official was functioning in a core judicial or prosecutorial capacity, absolute immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." DiBlasio, 344 F.3d at 297 (quotations and citation omitted).

The administrative proceedings were conducted pursuant to the New York State Administrative Procedure Act ("SAPA") and regulations promulgated by the Commissioner of Labor. Part 701 of the Compilation of Codes, Rules and Regulations of the State of New York "establishes procedures for adjudicatory proceedings held by the Commissioner of Labor * * *." 12 N.Y.C.R.R. § 701.1. "Adjudicatory proceeding" is defined as "a proceeding before the Department [of Labor of the State of New York] in which a determination of legal rights, duties or privileges of named parties thereto is required by law to be made only on a record and after an opportunity for a formal adversarial hearing." 12 N.Y.C.R.R. § 701.2(e). "All adjudicatory proceeding [sic] shall be conducted by a hearing officer who shall have the power and authority

of hearing officers as set forth in the State Administrative Procedure Act, Labor Law and any other pertinent statutes and regulations."[4] 12 N.Y.C.R.R. § 701.3. "Hearing officer" is defined as "the person authorized or designated by the commissioner to conduct a hearing." 12 N.Y.C.R.R. § 701.2(b). The hearing officer: regulates the course of the hearing; fixes the time for filing briefs and other documents; is not bound by technical rules of evidence or procedure and may conduct the hearing "in such order and manner as he or she deems appropriate to ascertain the substantial rights of the parties;" "may exclude irrelevant or unduly repetitious evidence or cross-examination from any proceeding;" may examine the parties and witnesses; may "issue subpoenas in the name of the department, at the request of any party, requiring attendance and giving of testimony by witnesses and the production of books, papers, documents and other evidence;" and "may direct the parties to appear and confer to consider the simplification or settlement of the issues by consent of the parties." 12 N.Y.C.R.R. § 701.9; see also SAPA § 304. The hearing officer may not "communicate * * * in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except upon notice and opportunity for all parties to participate." SAPA § 307(2). The hearing officer must render a written decision or report and recommendation containing "a statement of the issues, the findings of fact, the conclusions of law and the reasons therefor." 12 N.Y.C.R.R. § 701.12. "If a report and recommendation is rendered, the commissioner shall adopt, reject or modify the hearing officer's recommendation and a final order and decision shall thereupon be entered and filed with the Secretary to the department, unless the commissioner directs that

---

[4] Section 303 of the SAPA provides, in relevant part, that "[e]xcept as otherwise provided by statute, the agency, * * *, or one or more hearing officers designated and empowered by the agency to conduct hearings shall be presiding officers. Hearings shall be conducted in an impartial manner. * * *"

20

further proceedings be held. * * *" Id. A party may appeal the final decision pursuant to Article 78 of the New York Civil Practice Law and Rules. 12 N.Y.C.R.R. § 701.13. The parties to the administrative proceeding are entitled to pre-hearing discovery as set forth in 12 N.Y.C.R.R. § 701.6. During the hearing, the parties may present evidence and argument, subpoena witnesses and documents for the hearing, appear in person or be represented by counsel and call witnesses and examine and cross-examine other parties and their witnesses. 12 N.Y.C.R.R. § 701.9(b) and (d); see also SAPA § 501 ("In a proceeding before an agency, every party or person shall be accorded the right to appear in person or by or with counsel.") Section 302(1) of the SAPA provides that "[t]he record in an adjudicatory proceeding shall include: (a) all notices, pleadings, motions, intermediate rulings; (b) evidence presented; (c) a statement of matters officially noticed except matters so obvious that a statement of them would serve no useful purpose; (d) questions and offers of proof, objections thereto, and rulings thereon; (e) proposed findings and exceptions, if any; (f) any findings of fact, conclusions of law or other recommendations made by a presiding officer; and (g) any decision, determination, opinion, order or report rendered." Thus, the administrative proceedings against Thomas were clearly adversarial in nature and conducted before an impartial trier of fact who must be able to perform his or her functions without harassment or intimidation pursuant to the procedural safeguards set forth in the SAPA and regulations promulgated thereunder; the hearing officer and commissioner must rely upon precedent, at the very least, in rendering conclusions of law; and any errors committed during the proceedings were correctable on an appeal pursuant to Article 78 of the New York Civil Practice Law and Rules. Accordingly, both the hearing officer who made the findings challenged by plaintiffs as defamatory and the Commissioner who adopted those findings functioned in a quasi-judicial capacity and are entitled to absolute immunity from plaintiffs' stigma-plus claim. See,

21

e.g. Butz v. Economou, 438 U.S. 478, 513-14, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) (holding the administrative law judges or hearing examiners within the executive branch who act pursuant to the Administrative Procedure Act are entitled to absolute immunity because "administrative adjudications contain many of the same procedural safeguards that characterize judicial proceedings.")

For all of the foregoing reasons, the branch of the State defendants' motion seeking dismissal of plaintiffs' stigma-plus due process claim (first cause of action) is granted and that claim is dismissed in its entirety with prejudice for failure to state a claim for relief.


b.    Confrontation Clause Violation (Fifth Cause of Action)

Although, as the State defendants contend, "the Confrontation Clause [of the Sixth Amendment to the United States Constitution] does not come into play until the initiation of criminal proceedings," S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 742, 104 S. Ct. 2720, 81 L. Ed. 2d 615 (1984); see also Hannah v. Larche, 363 U.S. 420, 440 n. 16, 80 S. Ct. 1502, 4 L. Ed. 2d 1307 (1960) (holding that the Sixth Amendment "is specifically limited to 'criminal prosecutions'"), its reach has been extended to quasi-criminal proceedings, i.e., proceedings that are "very much akin to making an official adjudication of criminal culpability." Jenkins v. McKeithen, 395 U.S. 411, 427, 89 S. Ct. 1842, 23 L. Ed. 2d 404 (1969). In Jenkins, the Supreme Court extended the Sixth Amendment protections to an agency that served an "accusatory function," i.e., it was "empowered be to be used * * * to find named individuals guilty of violating [state and federal] criminal laws * * * to brand them as criminals in public." Id. at 427-28, 89 S. Ct. 1843.

Nonetheless, assuming, *arguendo*, that the 2007-2008 administrative proceedings were

quasi-criminal in nature, the complaint fails to allege a violation of the Confrontation Clause. Plaintiffs base their Confrontation Clause claim upon the State defendants' failure to call Valenti and DiBenedetto, the two (2) individuals who had retracted their testimony after the first administrative proceedings, as witnesses during the 2007-2008 administrative proceedings. (See Compl., ¶ 69). Plaintiffs do not allege, *inter alia*, that Thomas or D&D were prevented or restricted in any way from calling those individuals as witnesses on their own behalf during the 2007-2008 administrative proceedings or from otherwise cross-examining any witness against them during the hearing, nor that the State defendants used any out-of-court statements by Valenti or DiBenedetto against them during the hearing in the 2007-2008 administrative proceedings. Moreover, since the State defendants did not use Valenti and DiBenedetto as witnesses against Thomas or D&D at all during the 2007-2008 administrative proceedings, presumably due to their lack of credibility, plaintiffs were not deprived of their right to confront any witness against them during those proceedings. Accordingly, the branch of the State defendants' motion seeking dismissal of plaintiffs' Confrontation Clause due process claim (fifth cause of action) is granted and that claim is dismissed in its entirety with prejudice for failure to state a claim for relief.

### c.    Sixth Cause of Action

#### i.    Selective Enforcement

Although designated as a due process claim, plaintiffs' sixth cause of action alleges that defendants "are selectively attempting to collect taxes from [them]" in violation of their "right to be treated equally under the law." (Compl., ¶ 75). Thus, plaintiffs' sixth cause of action can be liberally read to assert a selective enforcement equal protection claim. See <u>Church of American</u>

23

_Knights of the Ku Klux Klan v. Kerik_, 356 F.3d 197, 210 (2d Cir. 2004) (holding that the phrase "selective enforcement" is "associated with analysis under the Equal Protection Clause.")

"In order to succeed on a selective enforcement theory, [plaintiffs] must show both (1) that [they were] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." _Doninger v. Niehoff_, 642 F.3d 334, 357 (2d Cir. 2011) (quotations and citation omitted), _cert. denied_, 132 S. Ct. 499, 181 L. Ed. 2d 346 (2011); _see also Deegan v. City of Ithaca_, 444 F.3d 135, 146 (2d Cir. 2006) ("To prove a selective enforcement claim, a plaintiff must demonstrate that laws were not applied to him as they were applied to similarly situated individuals and that the difference was intentional and unreasonable."); _Kerik_, 356 F.3d at 210 ("A selective enforcement claim requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated.") Since plaintiffs do not allege that any other similarly situated person or entity was treated differently than them, or that any defendant acted with an improper motive in their attempt to collect plaintiffs' tax obligation from them, the complaint fails to state a plausible selective enforcement claim. To the extent the complaint can be read to allege that the Town was treated more favorably than plaintiffs, there are no factual allegations from which it may plausibly be inferred that the Town was similarly situated to plaintiffs, i.e., that it owed a tax obligation to the State defendants which the State defendants attempted to collect differently than plaintiffs' tax obligation. Accordingly, the complaint fails to state a plausible selective enforcement equal protection claim.

In any event, plaintiffs seek only damages with respect to their sixth cause of action.[5]

"The principle of comity bars federal courts from granting damages relief in [state tax] cases * *
*." Fair Assessment in Real Estate Association, Inc. v. McNary, 454 U.S. 100, 107, 102 S. Ct.
177, 70 L. Ed. 2d 271 (1981); see also Levin v. Commerce Energy, Inc., 560 U.S. 413, 130 S. Ct.
2323, 176 L. Ed. 2d 1131 (2010). "[T]axpayers are barred by the principle of comity from
asserting Section 1983 actions against the validity of state tax systems in federal courts. Such
taxpayers must seek protection of their federal rights by state remedies, provided of course that
those remedies are plain, adequate, and complete * * *." Fair Assessment, 454 U.S. at 116, 102
S. Ct. 177; see also Casciani v. Town of Webster, 501 Fed. Appx. 77, 80 (2d Cir. Nov. 7, 2012)
(summary order) ("Actions under Section 1983 seeking damages related to the collection of state
taxes are barred by the principle of comity so long as there is a procedurally adequate state
alternative procedure for challenging the [collection].") Since a plain and adequate state court
forum is available to plaintiffs to pursue their claim seeking damages based upon the State

---

[5] The complaint does not seek a declaration with respect to who owns the right to collect
the debt owed to plaintiffs by the Town. The issue in New Hampshire Fire Insurance Co. v.
Scanlon, 362 U.S. 404, 80 S. Ct. 843, 4 L. Ed. 2d 826 (1960), the case cited by Frank in his letter
dated February 7, 2013, was whether a claimant of property distrained for tax delinquencies by
the IRS can bring a summary proceeding to recover on the indebtedness or must resort to a
plenary action. Thus, that case has no applicability to plaintiffs' claim seeking damages for the
collection of a tax obligation by the State defendants. To the extent plaintiffs request leave to
amend their complaint to seek a declaration that the State defendants have a legal obligation to
collect the Town's indebtedness to them in satisfaction of their State tax obligation, such a claim
does not allege a constitutional or federal law violation and, thus, does not state a plausible
Section 1983 claim. See Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (holding that in order
to state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was
"committed by a person acting under color of state law," and (2) that such conduct "deprived [the
plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United
States.") Accordingly, any such amendment would be futile.

defendants' attempts to collect admitted tax obligations from them, see N.Y. Tax Law § 3034 (providing that a civil action in the New York State Court of Claims, following the exhaustion of administrative remedies, is the "exclusive remedy for recovering damages" in connection with any collection of any tax), their sixth cause of action is barred by the principle of comity.

For the forgoing reasons, the sixth cause of action is dismissed in its entirety without prejudice to commencing any appropriate action in state court.

        d.     Statute of Limitations

Claims pursuant to 42 U.S.C. §1983 are governed by New York's three (3)-year statute of limitations. See Owens v. Okure, 488 U.S. 235, 249-250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). Although state law governs the applicable limitations period, federal law governs when a federal claim accrues. See Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); Covington v. City of New York, 171 F.3d 117, 121 (2d Cir. 1999). Generally, under federal law, a claim accrues when "the plaintiff has 'a complete and present cause of action,' * * *, that is, when 'the plaintiff can file suit and obtain relief'." Wallace, 549 U.S. at 388, 127 S.Ct. 1091 (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc., 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997)); see also Gabelli v. S.E.C., 133 S.Ct. 1216, 1220, 185 L. Ed. 2d 297 (2013) (holding that the "standard rule" is that a claim accrues when the plaintiff has a "complete and present cause of action.") "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." Wallace, 549 U.S. at 391, 127 S.Ct. 1091.

i.      Malicious Prosecution Claim (Second Cause of Action)

The limitations period for malicious prosecution claims under Section 1983 "starts to run only when the underlying criminal action is conclusively terminated." <u>Murphy v. Lynn</u>, 53 F.3d 547, 548 (2d Cir. 1995); <u>see also</u> <u>Walters v. City Department of Correction</u>, No. 11-3112-cv, 2013 WL 1405867, at * 1 (2d Cir. Apr. 9, 2013) (summary order). The criminal charge against Thomas was commenced on or about May 28, 2004. (Compl., ¶ 16). Since the criminal charges against Thomas were dismissed based upon a speedy trial violation, i.e., because the State "failed to express their readiness for trial within the allowable six-month statutory period mandated by [New York] CPL Section 30.30(1)(a)," (Compl., ¶ 20), the criminal charges were dismissed against Thomas more than three (3) years before the commencement of this action on July 3, 2012. Accordingly, the branch of the State defendants' motion seeking dismissal of plaintiffs' Section 1983 malicious prosecution claim is granted and that claim (second cause of action) is dismissed in its entirety with prejudice as time-barred.

ii.      False Arrest and Abuse of Process Claims (Third and Fourth Causes of Action)

The limitations period for false arrest and imprisonment claims under Section 1983 begins to run "when the alleged false imprisonment ends, * * * [i.e.,] once the victim becomes held pursuant to [legal] process- when, for example, he is bound over by a magistrate or arraigned on charges." <u>Wallace</u>, 549 U.S. at 389, 127 S. Ct. 1091 (emphasis omitted); <u>see also</u> <u>Lynch v. Suffolk County Police Department</u>, 348 Fed. Appx. 672, 675 (2d Cir. Oct. 14, 2009). "Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not be absence of legal process,

27

but by *wrongful institution* of legal process." Wallace, 549 U.S. at 390, 127 S.Ct. 1091.

Similarly, a claim for abuse of process ordinarily "accrues at such time as the criminal process is set in motion * * * against the plaintiff," Duamutef v. Morris, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997); see also Frooks v. Town of Cortlandt, 997 F. Supp. 438, 455 (S.D.N.Y. 1998), aff'd, 182 F.3d 899 (2d Cir. 1999), or when the plaintiff becomes aware that "such process was employed for an inappropriate collateral objective.[6] Duamutef, 956 F. Supp. at 1118 (quotations and citation omitted). Thus, plaintiffs' false arrest and abuse of process claims accrued when legal process was initiated against Thomas, which, under New York law, occurred when, or shortly after, he was issued a desk appearance ticket on May 28, 2004. See, e.g. Lynch, 348 Fed. Appx. at 675. Since more than three (3) years elapsed between the date Thomas was issued an appearance ticket and the filing of this lawsuit on July 3, 2012, plaintiffs' Section 1983 false arrest and abuse of process claims are time-barred. Accordingly, the branch of the State defendants' motion seeking dismissal of plaintiffs' Section 1983 false arrest and abuse of process claims is granted and those claims (third and fourth causes of action) are dismissed in their entirety with prejudice.


iii.    State Law Claims

To the extent the complaint can be read to assert state law claims for defamation, malicious prosecution, abuse of process and false arrest, those claims are also time-barred. Section 215(3) of the New York Civil Practice Law and Rules provides a one (1)-year limitations

---

[6] Plaintiffs were clearly aware of the purported "collateral objective" at the time the desk appearance ticket was issued since the abuse of process claim is based upon the prior comment by the Town's project manager that the Town would "destroy" D&D and Thomas in retaliation for the filing of the breach of contract action in 2001. (Compl., ¶ 15).

period for any "action to recover damages for * * * false imprisonment, malicious prosecution, libel, slander, [or] false words causing special damages * * *." In addition, since abuse of process is an intentional tort, any claim for abuse of process is also governed by a one (1)-year limitations period. See 10 Ellicott Square Court Corp. v. Violet Realty, Inc., 81 A.D.3d 1366, 1368, 916 N.Y.S.2d 705 (4th Dept. 2011), lv. denied, 17 N.Y.3d 704, 929 N.Y.S.2d 95, 952 N.E.2d 1090 (N.Y. 2011); Benyo v. Sikorjak, 50 A.D.3d 1074, 1077, 858 N.Y.S.2d 215 (2d Dept. 2008); Beninati v. Nicotra, 239 A.D.2d 242, 242, 657 N.Y.S.2d 414 (1st Dept. 1997). Since the Section 1983 malicious prosecution, false arrest and abuse of process claims are all time-barred under the three (3)-year limitations period applicable to Section 1983 claims, those same state law claims are *a fortiori* time-barred under the shorter state law limitations period. Moreover, since the hearing officer's findings and the final determination in the 2007-2008 administrative proceedings were rendered more than one (1) year prior to the commencement of this action on July 3, 2012, any state law defamation claim is time-barred as well. Accordingly, the branch of the State defendants' motion seeking dismissal of any state law claims asserted by plaintiffs is granted and those claims (first through fourth causes of action) are dismissed in their entirety with prejudice.

iv.    Equitable Considerations

A.    Tolling

"Statutes of limitations limit the availability of remedies and, accordingly, may be subject to equitable considerations, such as tolling * * *." Federal Housing Finance Agency v. UBS Americas Inc., 712 F.3d 136, 140 (2d Cir. 2013); see also Young v. U.S., 535 U.S. 43, 49, 122 S. Ct. 1036, 152 L. Ed. 2d 79 (2002) (quotations and citation omitted) ("[L]imitations periods are

29

customarily subject to equitable tolling.") "Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing." Veltri v. Building Service 32B-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he had been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way." A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 144 (2d Cir. 2011) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)). "Reasonable diligence is a prerequisite to the applicability of equitable tolling." Koch v. Christie's International PLC, 699 F.3d 141, 157 (2d Cir. 2012).

"Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." Koch, 699 F.3d at 157 (quoting Corcoran v. N.Y. Power Authority, 202 F.3d 530, 543 (2d Cir. 1999) (internal quotations and citation omitted)); see also Young, 535 U.S. at 50, 122 S. Ct. 1036 (finding that equitable tolling may be warranted where the plaintiffs had been "induced or tricked by [their] adversary's misconduct into allowing the filing deadline to pass."); Veltri, 393 F.3d at 323 ("[E]quitable tolling has been held appropriate * * * where defendant induced plaintiff to file late through trickery or deception, * * * [or] where plaintiff was somehow prevented from learning of her cause of action within the statutory period.") In addition, equitable tolling has been applied "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period," Brown v. Parkchester South Condominiums, 287 F.3d 58, 60

(2d Cir. 2002); see also Young, 535 U.S. at 50, 122 S. Ct. 1036 (holding that equitable tolling may be warranted when a plaintiff shows that he "actively pursued his judicial remedies by filing a defective pleading during the statutory period."(quotations and citation omitted)), and "where the plaintiff's failure to comply with the statute of limitations is attributable to [a] medical condition." Brown, 287 F.3d at 60. Although equitable tolling may be appropriate under other circumstances, see Young, 535 U.S. at 50, 122 S. Ct. 1036, it "is considered a drastic remedy applicable only in rare and exceptional circumstances." A.Q.C., 656 F.3d at 144 (alterations, quotations and citation omitted). "[T]he principles of equitable tolling * * * do not extend to * * * a garden variety claim of excusable neglect." Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990).

Plaintiffs have not demonstrated any extraordinary circumstances for their failure to timely file their complaint. Thomas has not opposed the State defendants' motion to dismiss and Frank does not address the State defendants' limitations argument at all. At most, the complaint can be read to allege that plaintiffs mistakenly believed that they needed to exhaust their administrative remedies, i.e., await the denial of their motion for leave to appeal to the New York State Court of Appeals regarding the dismissal of their Article 78 petition challenging the final decision in the administrative proceedings, before filing this action. (See Compl., ¶ 33). However, "exhaustion of state administrative remedies * * * [is] not required as a prerequisite to bringing an action pursuant to Section 1983," Patsy v. Board of Regents of State of Florida, 457 U.S. 496, 516, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982); see also Porter v. Nussle, 534 U.S. 51, 523, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002), unless Congress specifically requires it. Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006). Thus, "[t]he filing of [an] Article 78 petition [does] not toll the limitations period * * *." Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007).

31

"[I]gnorance of the law is not a sufficiently extraordinary or exceptional circumstances [sic] to warrant equitable tolling of the statute of limitations." Khan v. U.S., 414 F. Supp. 2d 210, 216 (E.D.N.Y. 2006); see also Antonmarchi v. Consolidated Edison Co. of New York, Inc., No. 12-1849, 2013 WL 1007682, at * 3 (2d Cir. Mar. 15, 2013) (summary order) ("[I]gnorance of the law is not sufficient to justify equitable tolling."); Dezaio v. Port Authority of NY and NJ, 205 F.3d 62, 64 (2d Cir. 2000) ("[I]gnorance of the law excuses no one; not because courts assume everyone knows the law, but because this excuse is one all will plead and no one can refute.") Accordingly, plaintiffs' mistaken belief that they were required to exhaust their state administrative remedies prior to commencing a Section 1983 action is not a basis for equitable tolling of the applicable limitations period.

## B.    Estoppel

"Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit." Dillman v. Combustion Engineering, Inc., 784 F.2d 57, 60-1 (2d Cir. 1986); see also Buttry v. General Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 1995) (accord). "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." Buttry, 68 F.3d at 1493. Since plaintiffs have not even alleged, much less demonstrated, that any defendant made a misrepresentation to plaintiffs upon which they reasonably relied in failing to timely file the complaint, the doctrine of equitable estoppel is not

32

applicable to their time-barred claims.[7]

C.    Leave to Amend

Although, "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quotations and citation omitted); see also Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010), leave to amend is not required where a proposed amendment would be futile. Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011); see also Mennella v. Carey, 253 Fed. Appx. 125, 126 (2d Cir. Nov. 6, 2007) (summary order); Morpurgo v. Incorporated Village of Sag Harbor, 697 F. Supp. 2d 309, 342 (E.D.N.Y. 2010), aff'd, 417 Fed. Appx. 96 (2d Cir. Apr. 5, 2011). "[A] complaint amendment would be futile only if the amended complaint would not contain enough allegations of fact to state a claim for relief that is plausible on its face." MetLife Investors USA Ins. Co. v. Zeidman, 734 F. Supp. 2d 304, 311 (E.D.N.Y. 2010), aff'd, 442 Fed. Appx. 589 (2d Cir. Sept. 19, 2011).

Since, for the reasons set forth above, any amendment to the complaint would be futile, Frank's request for leave to amend the complaint is denied.

III.    Conclusion

For the reasons stated herein: (1) the IRS's motion to dismiss the complaint as against it pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is granted and the complaint is

---

[7] In light of the dismissal of all of plaintiffs' claims, it is unnecessary to consider the State defendants' remaining contentions.

dismissed in its entirety without prejudice as against the IRS for lack of subject matter jurisdiction; (2) the State defendants' motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent that (a) plaintiffs' Section 1983 claims seeking damages as against the State defendants, with the exception of the Doe defendants in their individual capacity, and any state law claims against the State defendants, with the exception of any state law claim seeking damages against the Doe defendants in their individual capacity, are dismissed in their entirety without prejudice for lack of subject matter jurisdiction, (b) plaintiffs' sixth cause of action is dismissed in its entirety as barred by the principle of comity, without prejudice to recommencing any appropriate action in state court, and (c) the complaint is otherwise dismissed in its entirety with prejudice for failure to state a claim for relief; and (3) Frank's application for leave to amend the complaint is denied. The Clerk of the Court shall enter judgment in favor of defendants, close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this order upon all parties as provided in Rule 5(b) of the Federal Rules of Civil Procedure, including mailing copies of this order to plaintiffs at their last known address.

SO ORDERED.

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 24, 2013
       Central Islip, N.Y.

34